414 So.2d 684 (1982)
STATE of Louisiana
v.
Joseph MARSHALL.
No. 81-KA-0426.
Supreme Court of Louisiana.
May 17, 1982.
Dissenting Opinion June 16, 1982.
Rehearing Denied June 18, 1982.
*685 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Richard J. Petre, Jr., Harold J. Gilbert, Jr., J. Kevin McNary, Asst. Dist. Attys., for plaintiff-appellee.
John M. Lawrence of Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
BLANCHE, Justice.
Defendant, Joseph Marshall, was convicted of first degree murder, a violation of R.S. 14:30. Following the jury's unanimous recommendation of capital punishment, Marshall was sentenced to death. Defendant appeals his conviction and sentence, urging twenty assignments of error. Finding reversible merit as to one of these assignments, we pretermit consideration of the remaining errors assigned by defendant.
Three visitors to the City of New Orleans, Max Minnig, Ray Saunders and Mary Jo Saunders, left their hotel, intending to walk to a nearby restaurant for dinner. When the three got lost in a local housing project, they asked for directions from three youths: Joseph Marshall, Kevin Marshall and James Jones. Though the Marshalls, who are not related, misdirected them, the trio were able to obtain proper instructions from another local resident. The visitors attempted to leave the housing project area when they were overtaken by one of the three youths, who possessed a handgun and demanded money. When Mr. Minnig refused to comply, the gunman pulled the trigger, but the weapon misfired. Minnig then told the assailant to "get out of here", and swung at defendant with his right arm. Defendant pulled the trigger again and, this time, the gun fired, hitting Minnig in the chest. After the victim was shot a second time, another young man appeared. He demanded and received money from Mr. Saunders. He also took the fur cape Mrs. Saunders had been wearing. After the shooting, Joseph Marshall, Kevin Marshall and James Jones ran back into the housing project.
Joseph and Kevin Marshall were both indicted for first degree murder. Defendants pleaded not guilty at their arraignment *686 and the trial court appointed John M. Lawrence of the Orleans Indigent Defender Program to represent both defendants.
Four months before trial, Lawrence moved the trial court to appoint separate counsel for each defendant because, among other reasons, "[t]he interest of each defendant with respect to evidence, presentation of testimony, decision to take the stand or not, the presentation of a defense, accountability and effective assistance of counsel, are different. * * *"
Two months later, in conjunction with a motion to suppress hearing, Lawrence called the court's attention to the motion to appoint separate counsel.[1] The trial judge, without conducting a hearing to determine the existence of a conflict, denied the motion.
At trial James Jones testified, pursuant to a plea bargain agreement with the state, that he acted as a lookout for defendants and witnessed the murder. Jones testified that Joseph Marshall was the gunman and Kevin Marshall the second man.
Joseph Marshall did not take the stand in his own behalf, and neither the state nor the defense called Kevin Marshall as a witness. Defense counsel made at least two objections to the testimony of prosecution witnesses regarding the purported actions and statements of co-defendant Kevin Marshall.[2] At the trial's conclusion, the jury found defendant guilty of first degree murder and, following a penalty hearing, recommended that defendant be sentenced to death. Defendant filed a motion for a new trial and in arrest of judgment, again raising the claim that the multiple representation of himself and Kevin Marshall by a single appointed attorney over objection violated federal constitutional guarantees of effective assistance of counsel. The trial judge denied defendant's motion.
On appeal, defendant argues that the trial court committed reversible error by summarily overruling his pre-trial motion to appoint separate counsel because of possible conflict of interests. After reviewing the record and the applicable United States Supreme Court decisions, we conclude that we are compelled to reverse defendant's conviction, vacate his sentence and order a new trial.
The relationship between joint representation and ineffective assistance of counsel has been thoroughly examined by the United States Supreme Court in its opinions rendered in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) and Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
In Holloway, a public defender appointed to represent three defendants requested the appointment of separate counsel for each of the defendants three weeks prior to trial. After a hearing, the trial court denied the request. The defendant renewed the motion on the first day of trial, explaining that he could not cross-examine each client in behalf of the other co-defendants. The court again rejected counsel's request.
Because of alleged inconsistencies in the defendants' versions of the events surrounding the crime, the public defender refused to examine any of his clients and, instead, permitted them to testify in narrative form. The United States Supreme Court reversed defendants' convictions, holding that they were deprived of effective *687 assistance of counsel. See Lowenthal, Joint Representation in Criminal Cases: A Critical Appraisal, 64 Va.L.Rev. 939 (1978).
Although the Supreme Court declined to adopt a constitutional rule barring joint representation in criminal cases, it overturned the defendants' convictions because counsel's motion, as an officer of the court, "brought home" the "possibility" of a conflict of interest. 435 U.S. at 485, 98 S.Ct. at 1179, 55 L.Ed.2d at 435. According to the majority opinion, the trial court's failure "either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel" constituted reversible error. 435 U.S. at 484, 98 S.Ct. at 1178-79, 55 L.Ed.2d at 434.
Thus, Holloway mandates that when counsel providing joint representation moves before trial for the appointment of separate counsel, the trial judge must either grant the request or investigate the risks of multiple representation if there is a possibility of conflict of interests. See also Tague, Multiple Representation and Conflicts of Interest in Criminal Cases, 67 Geo.L.J. 1075 (1979). The failure of the trial court to do either is a deprivation of the co-defendants' Sixth Amendment right to the effective assistance of counsel, requiring automatic reversal of any conviction obtained during the forced joint representation, even if the complaining co-defendant fails to show specific prejudice. 435 U.S. at 487-89, 98 S.Ct. at 1180-81, 55 L.Ed.2d at 436-437.
In Sullivan, a co-defendant accepted representation from the two attorneys retained by his two co-defendants. At no time did Sullivan or his lawyers object to the multiple representation. All three defendants were tried separately. Sullivan was the first of the defendants to come to trial. After his conviction, Sullivan moved for post-conviction relief, claiming that he was denied effective assistance of counsel because his attorneys represented conflicting interests.
The Supreme Court dismissed Sullivan's claim that he was deprived of his Sixth Amendment right to effective counsel. In articulating its unwillingness to find merit in petitioner's post-trial allegations, the high court concluded:
We hold that the possibility of conflict of interest is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348.
Thus, contrary to the accused in Holloway, the defendant in Sullivan was required to show that he was actually prejudiced because of his attorney's multiple representation.
The instant case presents a situation that resembles both Holloway and Sullivan. As in Holloway, Marshall did not retain his counsel, but was represented by a court-appointed attorney. Further, Marshall's attorney voiced his concern of a possible conflict of interest well in advance of trial. Like Sullivan, Marshall was tried separately from his co-defendant and has not shown that he was actually prejudiced because of the joint representation. As a result, the merits of defendant's claim of ineffective counsel, in the present case, depends upon whether Sullivan modified Holloway by requiring defendants to show actual prejudice whenever a co-defendant is tried separately.
After carefully studying the Holloway and Sullivan decisions in pari materia, we conclude that the time at which a concern over the effects of multiple representation was raised was the determinative factor in the high court's apparently conflicting holdings.
When defendant raises a pre-trial objection because of a possible conflict of interest, Holloway requires the trial court to appoint separate counsel or take adequate steps to determine if the claimed risk is too remote. Failure to take either action warrants automatic reversal, even in the absence of specific prejudice. However, should the objection to multiple representation *688 be made after trial, Sullivan is controlling and the defendant must show actual prejudice in support of his claim.
We recognize that the severance granted by the trial judge, in the instant case, made it highly unlikely that any conflict of interest could arise which would have inhibited counsel's representation at trial. The severance placed counsel in a more favorable position because of the knowledge he would gain through his representation of all defendants. As noted by Justice Frankfurter in his dissent in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack."
Even so, Holloway did not expressly or impliedly limit its holding to multiple representation of co-defendants who are jointly tried. The presumed prejudice warranting automatic reversal arises before trial when the trial judge fails to either appoint separate counsel or to inquire into the matter adequately in response to a timely pretrial motion. According to Holloway, the chief evil of joint representation is its compulsion upon the defense lawyer to refrain from action in behalf of a client "not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." 435 U.S. at 490, 98 S.Ct. at 1182, 55 L.Ed.2d at 438.
Though a severance was granted by the trial judge in Sullivan, it was not the crucial factor in the court's decision to require a defendant to show actual prejudice. As stated by the majority:
In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. (emphasis added) 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346.
Further, in addressing defendant's claim that he was denied effective representation of counsel, the Sullivan court noted that the claim raised issues "expressly reserved" in Holloway. Thus, it is clear that the high court's opinion in Sullivan did not limit or modify its holding in Holloway concerning pre-trial objections related to multiple representation.
Because defendant was the trigger man, it is almost impossible to conceive what pretrial advantage counsel would have lost for defendant by virtue of his representation of others. Nevertheless, the Supreme Court, as this Court reads Holloway, has practically denied a trial judge any discretion when counsel, before trial, asserts a claim of conflict of interest except to appoint other counsel.
Accordingly, we conclude that the United States Supreme Court decision in Holloway v. Arkansas, supra, is controlling and compels us to reverse defendant's conviction, vacate his sentence, and order a new trial.[3]
REVERSED AND REMANDED.
MARCUS and WATSON, JJ., dissent and assign reasons.
LEMMON, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
Holloway involved a situation where the defendant raised the issue of a conflict of interest prior to a joint trial. The Supreme Court held that no specific prejudice had to be shown on appeal. Sullivan involved a situation where the defendant did not raise the issue of a conflict of interest prior to *689 trial, but each defendant was tried separately. The Supreme Court held that the possibility of a conflict of interest is not sufficient to impugn a criminal conviction. Rather, an "actual conflict of interest" must be shown before a conviction will be reversed because of multiple representation. The Court further stated that "Holloway reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest." The instant case involves a defendant who raised the issue of a conflict of interest prior to trialas in Hollowaybut who received a separate trialas in Sullivan. Thus, neither case is directly on point.
If Sullivan is controlling, the conviction should not be reversed because defendant has made no showing nor does he even allege any "actual conflict of interest" because of the joint representation. However, even assuming, as did the majority, that Holloway is controlling, a reversal of a conviction is not automatic merely because the trial judge failed to appoint separate counsel. Under Holloway, the trial judge is required "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." (Emphasis added.) I consider the granting of separate trials in this case to have been an adequate step in making the risk of conflict too remote to warrant separate counsel. The provision of separate trials removed the possibility of a conflict at the trial. Thus, only pretrial conflicts were possible in this case. As the majority notes, this defendant's role in the crime was that of the "trigger man." That fact alone renders the risk of pretrial conflict too remote to warrant separate counsel.
Accordingly, I respectfully dissent from the reversal of defendant's conviction and sentence.
WATSON, Justice, dissenting.
It is indeed difficult to understand why the trial court would not appoint separate counsel under the circumstances presented in this case. However, I disagree with the majority holding that prejudice is presumed. Before reversing the conviction, it is necessary to find prejudice to defendant's rights resulting from the failure to appoint separate counsel.
I reserve judgment on the question of the sentence, but I would affirm the conviction.
Therefore, I respectfully dissent.
LEMMON, Justice, dissenting.
When jointly represented defendants are tried separately, it is more logical for a reviewing court to apply Sullivan's requirement that defendant demonstrate an adverse effect on counsel's ability to perform than to predicate the decision on a distinction between Sullivan and Holloway based on whether defendant raises the allegation before or after trial. Since there was no showing that counsel's alleged "divided" loyalty actually impaired counsel's ability to represent a particular defendant who was tried alone, the conviction should be affirmed.
NOTES
[1] "I would like to comment briefly. I filed a Motion to have separate counsel appointed for each defendant under Holly v. Arkansas [sic]. Since I have statements made by both defendants we may have a problem as to how I will proceed with the defense when people are making statements against each other and against the interests of each other."

At a later hearing concerning a bail reduction and a motion to suppress, counsel reasserted his request that the court appoint separate counsel:
"The identification procedures here are such that I cannot call the co-arrestee or co-defendant since I also represent him and the source of this information leading to the arrest of Joseph Marshall is Kevin Marshall and being his counsel I cannot call him."
[2] During the testimony of one of the prosecution's witnesses, defense counsel moved for a mistrial, stating: "I object to any testimony about Kevin because I represent Kevin Marshall and I cannot call him in this matter. I move for a mistrial." The motion was denied.
[3] The defendant objected to certain comments made by the prosecutor during the sentencing hearing. The prosecutor's comments included a reference to automatic review of the propriety of the death penalty by this Court and the assertion that "somewhere down the line a Governor can sign a piece of paper and release Joseph Marshall back on an unsuspecting world." For purposes of the defendant's retrial, we refer the prosecutor to this Court's opinions in which death sentences were set aside because of such improper arguments. State v. Willie, 410 So.2d 1019 (La.1982); and State v. Lindsey, 404 So.2d 466 (La.1981). The prosecutor also characterized the defendant as an "animal", an epithet which we have previously warned may constitute reversible error. State v. Gray, 351 So.2d 448 (La.1977).