ON REHEARING
DIXON, Chief Justice.
A rehearing was granted to reconsider whether the defendant’s attorney was faced with a conflict of interest, and, if so, whether the effect of this conflict requires this case be remanded for further proceedings. The facts and procedural history are described in this court’s earlier decision. The issue on rehearing is what rule controls when defense counsel informs the trial judge during trial that a conflict of interest has arisen from his representation of both the defendant and the prosecutor’s surprise star witness, without raising any formal objection.
This court has held that a formal incantation is not required to make an objection in the trial court. State v. Shoemaker, 500 So.2d 385 (La.1987), State v. Vanderpool, 493 So.2d 574 (La.1986), State v. Boutte, 384 So.2d 773 (La.1980), State v. Jones, 332 So.2d 267 (La.1976). This is especially clear when an attorney complains to the court that he is being forced to labor under a conflict of interest. The nature of such a complaint can place an attorney in the difficult position of balancing the competing interests of two clients. Even while the issue is being raised before the trial judge, the attorney must be wary not to betray the confidences that may underlie his conflict. For this reason, when a conflict has been explicitly raised before the court, the trial judge must assume some responsibility to examine the nature of the conflict and its possible ramifications.
The defendant’s attorney, Edward Lopez, first learned that a conflict of interest existed while the trial was in progress. The defendant Carmouche had allegedly made statements to his cellmates to the effect that he was guilty of the offense with which he was charged. Although the incul-patory statements had been made some time earlier, the prosecution only became aware of the statements during trial, and *804 notified the defense counsel under C.Cr.P. 768 on the following day. This meant that defense counsel learned of the confession on the sixth and final day of trial, just prior to the close of the state’s case.
Lopez discovered that the witness who would disclose the confession, Ernest Jenkins, was one of his own clients in another case. As soon as Lopez was aware of the apparent conflict, he presented his dilemma to the trial judge:
“MR. LOPEZ: I would also state to the court, that the individual involved in this particular case who intends to make this statement is a client of my own. I represent Mr. Jenkins.
THE COURT: You represent him by court appointment.
MR. LOPEZ: Yes. It may be a distinct disadvantage to me because I may not be able to cross-examine Mr. Jenkins on certain things because there maybe (sic) a conflict of interest in what he told me.”
This was sufficient to alert the trial judge that an actual conflict existed and that defendant’s counsel felt required to balance the competing interests of his two clients. In State v. Kahey, 436 So.2d 475 (La.1983), this court accepted the definition of an actual conflict of interest set out in Zuck v. Alabama, 588 F.2d 436, 439 (5th Cir.1979), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979):
“If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.”
In State v. Kahey, supra at 485, this court found:
“When there is such a conflict of interest, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty. Accordingly, where the conflict is real, a denial of effective representation exists without a showing of specific prejudice. Castillo v. Estelle, 504 F.2d 1243, 1245 (5th Cir.1974)....”
Defendant’s counsel was confronted with an actual conflict of interest when one of his clients was arguably the most damaging witness against a second client. When Lopez cross-examined Jenkins, one of his clients would suffer. If Lopez failed to raise a doubt as to Jenkins’ credibility, the defendant’s case would be seriously damaged. On the other hand, if Lopez were successful in his cross-examination, he could jeopardize Jenkins’ plea bargain that had not yet been formalized.
After the trial court has been alerted that an actual conflict of interest exists, the judge must take the proper steps to assure that the defendant’s Sixth Amendment right to effective counsel is not abridged. In State v. Edwards, 430 So.2d 60, 62 (La.1983), this court summarized the law applicable to claims that multiple representation resulted in the ineffective assistance of counsel:
“The relationship between joint representation and ineffective assistance of counsel has been thoroughly examined by the United States Supreme Court in its opinions rendered in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). State v. Marshall, 414 So.2d 684 (La.1982). In Holloway, defendant raised the issue of a conflict of interest prior to a joint trial. In this situation, the Court held that the trial judge is required ‘either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel.’ In Sullivan, the defendant did not raise the issue of conflict of interest either before and (sic) during his separate trial. Rather, the defendant ... *805 raised the issue for the first time after his trial. In this situation, the Court held that a defendant ‘in order to establish a violation of the Sixth Amendment ... must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.’ ... Recently, in State v. Marshall, supra, we held that the time at which a concern over the effects of multiple representation is raised is the determinative factor in deciding whether the rules of Holloway or Sullivan are controlling....”
In its previous opinion, this court found the facts of this case were analogous to the facts in Cuyler v. Sullivan, supra, and therefore followed the guidelines established in that case. However, on rehearing, the court now acknowledges that the present facts fall directly between Cuyler v. Sullivan, supra, and Holloway v. Arkansas, supra, because the trial judge was first informed that an actual conflict existed during the trial. In this case the judge was told of the existing conflict at the earliest feasible opportunity but before the conflict had actually affected defense counsel’s representation.
When a conflict of interest is raised prior to trial as in Holloway, the court has the opportunity to remedy the conflict by appointing separate counsel. However, this is not a feasible alternative when the conflict does not arise until the trial is in progress. Furthermore, the conflict could remain an obstacle during the defense counsel’s closing argument, where he might be required to discredit the testimony of one of his clients.
On the other hand, when counsel informs a trial judge during trial that a conflict has arisen which could jeopardize the defendant’s protection under the Sixth Amendment, the judge must take steps to investigate the nature of the conflict and to form an appropriate remedy.
While being mindful of the restrictions inherent in the attorney/client privilege, the judge should require the attorney to disclose the basis of the conflict. If the judge determines that the conflict is not too remote, he should explain the conflict to the defendant outside the presence of the jury and inform the defendant of his right to representation that is free of conflict. Thereafter, if the defendant chooses to exercise his right, a statement should be prepared in narrative form, which indicates that the defendant is fully aware of his right but has chosen to make a knowing and intelligent waiver thereof. See United States v. Winkle, 722 F.2d 605 (10th Cir.1983) and United States v. Martinez, 630 F.2d 361 (5th Cir.1980). If the defendant opts not to waive his right to counsel that is free of conflict, the judge must offer the defendant and his counsel a mistrial under C.Cr.P. 775(1).
Once the judge determines that a conflict of interest in fact exists, it is presumed that the conflict will affect the defense counsel’s representation of his client. If the trial court fails to take the proper steps to protect defendant’s right to effective counsel, a reversal of the conviction is required. As stated by the United States Supreme Court in Glasser v. United States, 315 U.S. 60, 75-76, 62 S.Ct. 457, 467, 86 L.Ed. 680, 702 (1942), “The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.” In Holloway v. Arkansas, supra, the Court found the holding in Glasser v. United States, supra, to be “whenever a trial court improperly requires joint representation over timely objection reversal is automatic.” 435 U.S. at 489, 98 S.Ct. at 1181. This holding is applicable where defense counsel alerts the trial court during trial that he is faced with a conflict of interest and the trial judge orders counsel to continue without taking the proper steps to protect the defendant’s right to counsel that is free from conflict.
Accordingly, the conviction and sentence are reversed and the case is remanded for a new trial.
*806 LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents, adhering to the view expressed in the original opinion.
COLE, J., respectfully dissents, adhering to the original opinion.