554 So.2d 39 (1989)
STATE of Louisiana
v.
Tommy CAGE.
No. 87-KA-2778.
Supreme Court of Louisiana.
December 11, 1989.
Rehearing Denied January 18, 1990.
*40 William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., for appellee.
Sherry Waters, Craig Colwart, New Orleans, for appellant.
MARCUS, Justice.
Tommy Cage was indicted by the grand jury for the first degree murder of Arthur Johnson in violation of La. R.S. 14:30. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendation of the jury. On appeal, defendant relies on six assignments of error for the reversal of his conviction and sentence.[1]

FACTS
On April 16, 1986 at about 11:30 a.m., Arthur Johnson and Terry Kendrick were waiting at a bus stop on the corner of Desire Street and Florida Avenue in New Orleans. They were returning home from their morning classes at Southern University of New Orleans. Both wore medallions on gold chains. Kendrick testified that he noticed defendant and a companion walk past them and look at their medallions. He became suspicious and told Johnson to put his medallion inside his shirt as he had done. The bus pulled up and Kendrick went to board it. As he did so, defendant knocked him from behind onto the steps. While struggling over the medallion, defendant pulled a .38 caliber gun. The struggle continued until defendant was able to jerk the chain off Kendrick. Lloyd Turner, the bus driver, testified that he saw the struggle and saw defendant with a gun in his hand. When defendant pulled the gun, Johnson ran away from the bus. After getting Kendrick's chain, defendant chased after Johnson waving his gun. Turner and three other eyewitnesses testified that defendant stopped, took aim, and shot Johnson hitting him in the lower back. The shot was fired from approximately seventy-five feet. The impact of the bullet knocked Johnson forward and he fell to the ground. Defendant ran up to Johnson, stopped, and aimed the gun at him. Reginald Lewis, a bystander at the bus stop, testified that Johnson appeared to be paralyzed. Tony Jones, who was also waiting at the bus stop, testified that he heard Johnson beg not to be shot again. Romales Nevelles, Sr., a political campaigner in the neighborhood, testified that defendant said to Johnson, "Bitch, I told you don't run." Jones heard defendant make a similar comment to Johnson. Defendant then shot Johnson in the head, took the medallion, and ran into the Florida Housing Project. Paramedics found Johnson at the scene with no pulse, respiration, or blood pressure. He was pronounced dead a short time later at Charity Hospital.
The autopsy revealed that Johnson had been shot twice, once in the lower back at the end of the spine and once on the right side of the head just behind the hairline. Dr. Paul McGarry, the forensic pathologist who performed the autopsy, recovered both bullets from the body. He testified that *41 the wound to the back would cause immediate immobility, but that Johnson would have survived with prompt treatment. The wound to the head proved fatal. Dr. McGarry stated that a stiple mark, or gunpowder burn, found near the head wound indicated that the muzzle of the gun was approximately two feet from Johnson's head when the shot was fired. This was corroborated by eyewitness testimony. On April 17, pursuant to an arrest warrant, police went to defendant's home, but he was not there. Shortly after, police received a phone call from a family member that defendant had returned home and would be there waiting for them. Kendrick, Lewis, Nevelles, and Jones identified defendant from photographic lineups. Turner identified defendant at a police lineup. All of these witnesses made positive in-court identifications of defendant. Defendant admits firing the gun, but testified that he fired the first shot "just to be shooting" and that, the second time, the gun "just went off again."

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge erred in improperly instructing the jury regarding reasonable doubt. He argues that the instruction confused the jury and overstated the requisite degree of uncertainty. Specifically, defendant assigns error to the judge's instruction that the doubt "must be such ... as would give rise to a grave uncertainty" and that "[i]t is a doubt which a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty."
La.Code Crim.P. art. 804(A) provides that the court may define "reasonable doubt" in its charge to the jury. The test articulated by this court is whether, taking the instructions as a whole, reasonable persons of ordinary intelligence would understand the definition of "reasonable doubt." State v. Taylor, 410 So.2d 224 (La.1982). See also State v. Stramiello, 392 So.2d 425 (La. 1980).
Defendant's objection to the trial judge's instructions on reasonable doubt was overruled. The trial judge charged the jury as follows:
Ladies and Gentlemen, the Defendant is presumed to be innocent until he is proven guilty beyond a reasonable doubt.... If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty. If after giving a fair and impartial consideration to all the facts in the case you find the evidence unsatisfactory or lacking of one any single point indispensibly necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty. (Emphasis added.)
The use of "grave uncertainty" and "moral certainty," if taken out of context, might overstate the requisite degree of uncertainty and confuse the jury. However, taking the charge as a whole, we find that reasonable persons of ordinary intelligence would understand the definition of "reasonable doubt." Similar instructions have been upheld by this court. State v. Messiah, 538 So.2d 175 (La.1988); Taylor, supra. Accordingly, we find Assignment of Error No. 1 to be without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that, because the written verdict of the jury in the penalty phase was missing from the record, he *42 was unable to review it to insure that it met statutory requirements.
At the conclusion of deliberations, the jury returned to the courtroom and the foreman delivered the verdict to the judge. The judge reviewed the ballot slips finding that the jury was unanimous in its recommendation that defendant be sentenced to death and read the verdict in open court. However, the judge would not receive the verdict because it did not comply with his instructions. The jurors had identified each aggravating circumstance by letter rather than writing them out word for word. The judge directed the jury to return to the jury room to correct the verdict form. When the jurors returned to the courtroom, the judge noted that they still had not written out the exact wording of the aggravating circumstances. The jury left the courtroom again. When the jurors returned, the judge pointed out that they had omitted "unrelated" from one aggravating circumstance and "atrocious" from another. The jury foreman corrected this in open court and the judge accepted the verdict. The judge again reviewed the ballot slips noting that the recommendation was unanimous and again read the verdict into the record. The defendant rejected the court's offer to poll the jurors individually. The court then read the verdict to the jurors for a third time and asked them to indicate "Yes" if they agreed with it and "No" if they disagreed. After the verdict was read, all jurors answered affirmatively. He then ordered that the verdict be recorded.
At the time of defendant's trial, La.Code Crim.P. art. 905.7 prescribed the following verdict form in the penalty phase:
The form of the jury recommendation shall be as follows:
"Having found the below listed statutory aggravating circumstance or circumstances and, after consideration of the mitigating circumstances offered, the jury unanimously recommends that the defendant should be sentenced to death.
Aggravating circumstance or circumstances found:
s/______________________________________ Foreman"
....
This court has held that an omission from the record is not cause for reversal if that omission is inconsequential to a proper determination of the appeal. State v. Ford, 338 So.2d 107 (La.1976). The test is whether the omission is immaterial to adequate appellate review. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Vaughn, 378 So.2d 905 (La.1979).
In the instant case, the verdict read by the judge[2] is contained in the record and conforms exactly to the language specified in La.Code Crim.P. art. 905.7. Moreover, defendant was present when the verdict was read and did not object to its form. A review of the record affords this court adequate appellate review of the verdict. Accordingly, the omission of the written form from the record is inconsequential to a proper determination of the appeal.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial judge erred in allowing improper impeachment of character evidence during the penalty phase.
Defendant called his sister who testified to his non-violent nature. On cross-examination, the prosecutor asked if her opinion of defendant would change if he told her that defendant had been arrested for possession of a concealed weapon in 1985. She answered in the negative. He then *43 asked if her opinion would change if he told her that defendant had been arrested for resisting arrest and assault. At this point, defendant objected and moved for a mistrial. The trial judge sustained the objection, but denied the motion. Furthermore, the trial judge admonished the jury to disregard the prosecutor's comments.
La.Code Crim.P. art. 905.2 provides that:
The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender. The hearing shall be conducted according to the rules of evidence. Evidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue.
At the time of defendant's trial, La.R.S. 15:479 provided that "character" depends on general reputation, not on a particular person's opinion of defendant. State v. Toomer, 395 So.2d 1320 (La.1981).
The questions were not phrased in accord with La.R.S. 15:479. The state improperly sought the witness's opinion of defendant rather than his character based on general reputation. However, only two improper questions were asked. When the witness was asked the first question about defendant's arrest for possession of a concealed weapon, defendant did not object. After the second question was asked concerning defendant's arrest for resisting arrest and assault, defendant's objection was sustained and the judge admonished the jury. Moreover, at the beginning of the penalty phase, all the testimony and exhibits of the guilt phase, which included defendant's admission to three prior convictions, were introduced into evidence.[3] Both sides stipulated that defendant was the same person named in the bills of information for those convictions. The victims of the two prior robberies testified before defendant's sister testified. Under the circumstances, we find that defendant was not prejudiced by the state's questions.
Assignment of Error No. 3 is without merit.

SENTENCE REVIEW
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.Code Crim.P. art. 905.9 dictates that this court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1:
Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(a) PASSION, PREJUDICE OR ANY OTHER ARBITRARY FACTORS ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial judge erred in denying his motions for mistrial during the state's closing argument and rebuttal. He argues that the state created a substantial risk that the death sentence was imposed in an arbitrary, capricious, or unfair manner by injecting totally irrelevant factors into the proceedings.
Defendant objected and moved for a mistrial when the state said during closing argument, "The evidence presented was to take your mind off of the reality of [A]pril 16th." The objection was sustained and the motion denied. Defendant objected and moved for a mistrial when the state, discussing defendant's previous robbery convictions, said, "Based upon his character and his propensities, easily we could have had three murder victims instead of one." The objection and motion were denied. Defendant *44 also objected and moved for a mistrial during the following colloquy:
BY [THE STATE]: ... You are not in a unique position. You are not the only jurors in the world who have had to consider this. Other juries have come back
BY [DEFENDANT]: That's outside of the evidence, Your Honor.
BY THE COURT: I would sustain that as to what other juries might have done.
CLOSING ARGUMENT BY [THE STATE]: They don't want you to hear this.
BY [DEFENDANT]: I object.
BY [DEFENDANT]: Mistrial, Your Honor. This is actually prosecutorial misconduct, and nothing less.
BY THE COURT: The motion for a mistrial is denied.
BY [DEFENDANT]: Note our objection, please.
BY THE COURT: Ladies and Gentlemen, you are to disregard that last comment by the prosecutor. That is out of order, Mr. [Prosecutor]. Proceed.
Defendant's motion for a mistrial at the conclusion of the state's closing argument based on the totality of the state's conduct was denied. During rebuttal, defendant objected and moved for a mistrial when the state suggested that the jury in defendant's armed robbery conviction had deliberated for only ten minutes. The objection was sustained and the motion denied. Defendant also objected when the state referred to living conditions at Louisiana State Penitentiary during its rebuttal argument. The objection was overruled.
La.Code Crim.P. art. 774 provides that "[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." This court has held that improper closing argument is not reversible error unless the court determines that the jurors were influenced by the remarks and that the remarks contributed to the verdict. State v. Kyles, 513 So.2d 265 (La.1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988); State v. Lindsey, 428 So.2d 420 (La.), cert. denied, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983). In Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the United States Supreme Court held that the Chapman harmless error rule applies during the penalty phase of a capital case to the erroneous admission of psychiatric testimony in violation of the sixth amendment right set forth in Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).[4] Recently, this court applied the harmless error rule to the erroneous and improper arguments of the state, during the penalty phase, which presented to the jury inadmissible unsworn testimony to facts outside the record, not subject to cross-examination. State v. Smith, 554 So.2d 676 (La.1989). The harmless error rule provides that, "[b]efore a reviewing court may declare the erroneous admission of evidence to have been harmless, or not prejudicial, the state must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Smith, supra; Satterwhite, supra; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The first remark complained of occurred when the state said that the evidence which defendant had presented was designed to take the jurors away from April 16, 1986 (the date of the murder). Defendant had introduced evidence of his childhood, family life, and discovery of religion since he was jailed in an apparent effort to take the jurors' attention away from the offense. While, in general, references to defense techniques might not be proper, this was a valid remark referring to the evidence introduced. The second comment was made when the state suggested *45 that three people could have been murdered rather than one. The state introduced testimony of the two robbery victims who identified defendant as their assailant. One saw defendant with a gun and the other felt what she thought was a gun. Moreover, the circumstances and location of those two robberies were similar to the instant case in which the victim was murdered. Hence, the state's comment was a proper argument based on the evidence admitted.
Next, when the state said that the jury was not in "a unique position.... Other juries have come back," defendant's objection was sustained. At that point, the state remarked, "They don't want you to hear this." Defendant's motion for a mistrial was denied, but the court admonished the jury to disregard the comment. The state's comment was improper; however, it simply referred to an unconcluded statement as to what other juries might have done. During rebuttal, the state suggested that the jury in defendant's armed robbery conviction deliberated only ten minutes. Defendant's objection was sustained. The state's comment was improper but of no consequence. The state's reference to life at Louisiana State Penitentiary was also improper; however, the state was attempting to answer defendant's argument that life imprisonment would be sufficient punishment.
The state's argument consisted of twelve pages and sixteen pages in rebuttal (objections, argument, and rulings included). The state reminded the jury that defendant had already been found guilty of first degree murder, but that the state still carried the burden of proof in the penalty phase. The state further told the jury that it was the jury's duty to return the correct verdict based on defendant's character and propensities. "You worked within the system, a legal system, a lawful system. You do the right thing.... [I]t's not going to be easy. But the just thing is not always the easiest thing to do." The state reviewed evidence to show that defendant had a significant prior history of criminal activity. During rebuttal, the state reviewed the evidence to refute the mitigating factors advanced by defendant, to emphasize defendant's prior criminal activity, and to note that defendant admitted that his crime was terrible. Accordingly, considering the state's closing argument and rebuttal as a whole, we conclude that the state's improper remarks did not influence, prejudice, or divert the jurors from their sentencing obligations, which the trial judge correctly set forth in his charge to them after argument, and did not contribute to the verdict. Moreover, the state proved beyond a reasonable doubt that the remarks complained of did not contribute to the jury's recommendation that defendant be sentenced to death.
Assignment of Error No. 4 is without merit.

(b) STATUTORY AGGRAVATING CIRCUMSTANCES ASSIGNMENTS OF ERROR NOS. 5 AND 6
Defendant contends that the state failed to present sufficient evidence to support the aggravating circumstances that the offense was committed in an especially heinous, atrocious, or cruel manner and that the offender knowingly created a risk of death or great bodily harm to more than one person.
The jury in its verdict found the following aggravating circumstances:
(a) the offender was engaged in the perpetration or attempted perpetration of armed robbery (La.Code Crim.P. art. 905.4(A)(1));
(b) the offender has been previously convicted of an unrelated armed robbery (La.Code Crim.P. art. 905.4(A)(3));
(c) the offender knowingly created a risk of death or great bodily harm to more than one person (La.Code Crim.P. art. 905.4(A)(4)); and
(d) the offense was committed in an especially heinous, atrocious, or cruel manner (La.Code Crim.P. art. 905.4(A)(7)).
Armed robbery is the taking of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64.
*46 In the instant case, the evidence amply supports the jury's finding that defendant was engaged in the perpetration of an armed robbery. Four eyewitnesses testified that they saw defendant take Johnson's chain and medallion while armed with a gun. Moreover, defendant admitted that, while armed, he "snatched" the medallion off of Johnson.[5] Because the jury's finding of one statutory aggravating circumstance is supported by the record, we find it unnecessary to determine whether the jury erred in its finding of the complained of aggravating circumstances. Where one aggravating circumstance is upheld on review, the failure of another aggravating circumstance would not invalidate a death penalty. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). This is true so long as the evidence of the possibly unproven circumstances did not inject an arbitrary factor into the proceedings. State v. Tassin, 536 So.2d 402 (La.1988), cert. denied, ___ U.S. ___, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989). No such evidence was introduced in this case.
Assignments of Error Nos. 5 and 6 are without merit.

(c) PROPORTIONATELY TO THE PENALTY IMPOSED IN SIMILAR CASES
Federal constitutional law does not require a proportionality review. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Nonetheless, La.Sup. Ct.R. 28, § 4(b) provides that the district attorney shall file with this court a list of each first degree murder case tried after January 1, 1976 in the district in which sentence was imposed. Including the instant case, the state's list reveals that 178 first degree murder cases were tried in Orleans Parish between January 1, 1976 and June 20, 1988. Our research reveals that Orleans Parish juries have recommended the death penalty in twenty-four cases since January 1, 1976. Fourteen of those cases involved murders committed during the perpetration or attempted perpetration of an armed robbery.[6]
Our inspection of these cases shows that the penalty in the instant case is not disproportionate. For example, in State v. Kyles, supra, the 25-year-old defendant attacked a female shopper in a parking lot demanding her car keys. When she fought back, he shot her once in the temple. The defendant's felony arrests and pending felony charges as an adult were not made known to the jurors. In State v. Messiah, supra, the 25-year-old defendant approached a group of people in the parking lot of a fast food restaurant. He drew a gun and demanded money. When the victim responded that she had none, defendant killed her with one shot to the face. He had prior convictions for two non-violent felonies, one non-violent misdemeanor, and two municipal convictions. In State v. Thompson, supra, the 22-year-old defendant approached the victim as he was parking his car and pushed him to the ground. The victim offered his wallet and watch; nonetheless, defendant shot him five times. Defendant had an extensive juvenile record and adult convictions for possession of *47 weapons, possession of marijuana, and attempted armed robbery.
In the instant case, the 19-year-old defendant shot the victim twice, once as he was fleeing and a second time at close range when he was immobilized. The victim offered no resistance. Defendant has three prior adult convictions. In an effort to counteract the aggravating circumstances argued by the state, defendant argued three mitigating circumstances:
(1) his lack of significant criminal history prior to the crime (La.Code Crim.P. art. 905.5(a));
(2) his inability to appreciate the criminality of his conduct or to conform his conduct to the requirements of law due to intoxication at the time of the crime (La.Code Crim.P. art. 905.5(e));
(3) his youth (nineteen years at the time of the crime) (La.Code Crim.P. art. 905.5(f)).
Defendant admitted to three prior convictions, one for armed robbery committed just five days before Johnson's murder and one for first degree robbery committed the day before Johnson's murder. Regarding intoxication, defendant testified that he has smoked clickums[7] on an irregular basis since he was sixteen and that he smoked clickums on the morning of the crime. However, his testimony on direct was inconsistent varying from smoking none to smoking two on the morning of April 16, 1986. Furthermore, defendant's claim that he did not remember the events of April 16 after, and because of, smoking clickums was refuted by his own testimony. In addition, no objective evidence was introduced to show drug use by defendant. However, defendant did call a general practitioner who talked with him for a short time at court prior to testifying about the effects of clickums. The doctor also stated that it is impossible to tell if a person is chemically dependent based on just one personal interview. Lastly, defendant's age was a mitigating circumstance for the jury to consider. Accordingly, based on similar cases and our review of the record in the instant case, we are unable to conclude that the sentence of death is disproportionate to the penalty imposed in similar cases in Orleans Parish.
Hence, based on the above criteria, defendant's sentence of death does not constitute cruel, excessive, or unusual punishment.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed for all purposes except that this judgment shall not serve as a condition precedent to execution as provided by La.R.S. 15:567 until (a) defendant fails to timely petition the United States Supreme Court for certiorari; (b) that Court denies his petition for certiorari; (c) having filed for and been denied certiorari, defendant fails to petition the United States Supreme Court timely, under their prevailing rules, for rehearing of denial of certiorari; or (d) that Court denies his application for rehearing.
DENNIS, J., concurs in part and dissents in part with reasons.
NOTES
[1] The first assigned error relates to the guilt phase; the remaining five relate to the penalty phase. Defendant briefed only the first three assigned errors and addressed the fourth in his Capital Sentence Review Memorandum. However, as a matter of policy, this court will consider all assigned errors even if not briefed. State v. Bay, 529 So.2d 845 (La.1988).
[2] The trial judge read in open court:

Having found the below listed statutory aggravating circumstance or circumstances, and after consideration of the mitigating circumstances offered, the jury recommends that the defendant be sentenced to death. Aggravating circumstance or circumstances found: A, the offender was engaged in the perpetration or attempted perpetration of armed robbery. C, the offender has been previously convicted of an unrelated armed robbery. D, the offender knowingly created a risk of death or great bodily harm to more than one person. G, the offense was committed in an especially heinous, atrocious, or cruel manner. Signed Thaddeus Fouchea, Foreperson, January 24, 1987, New Orleans, Louisiana.
[3] Defendant was convicted of carrying a concealed weapon on February 2, 1984, armed robbery on April 10, 1986, and first degree robbery on April 15, 1986.
[4] In Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Court recognized that defendants formally charged with capital crimes have a sixth amendment right to consult with counsel before submitting to psychiatric examinations designed to determine their future dangerousness.
[5] The evidence also supports the jury's finding that defendant was previously convicted of an unrelated armed robbery. The victim of the armed robbery testified about the crime; moreover, defendant admitted his prior conviction.
[6] State v. Parker, 372 So.2d 1037 (La.1979), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983); State v. Jordan, 420 So.2d 420 (La. 1982) (rem'd for resentencing); State v. Marshall, 414 So.2d 684 (La.), cert. denied, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982); State v. Brown, 414 So.2d 689 (La.1982) (rem'd for resentencing); State v. Mattheson, 407 So.2d 1150 (La.1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); State v. James, 431 So.2d 399 (La.), cert. denied, 464 U.S. 908, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983); State v. Hamilton, 478 So.2d 123 (La.1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); State v. Kyles, 513 So.2d 265 (La. 1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988); State v. Brown, 514 So.2d 99 (La.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988); State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988); State v. Messiah, 538 So.2d 175 (La.1988); State v. John Sullivan, 526 So.2d 816 (La.1988); State v. Smith, 554 So.2d 676 (La.1989) (rem'd for new trial); State v. Tommy Cage, 554 So.2d 39 (La.1989).
[7] "Clickums" are typically marijuana cigarettes dipped in or sprayed with PCP, or phencyclidine.