THE MAY McGUIRL.

(Circuit Court of Appeals, Second Circuit.   January 15, 1919.)

Nos. 143, 144.

TOWAGE ☞11(10)—MOORING LAW—NEGLIGENCE.

A tug which, having in tow, tandem, two scows heavily loaded with brick, on reaching the Gowanus Canal, found congested, left them, for the night, with a single line from the front of the tow to the waist of the scow K., lying with an end fastened to the bulkhead, 15 feet from the end thereof, instead of placing them alongside the K. and each other, as she might, *held* at fault in not giving them the best mooring the situation afforded, which was the proximate cause of the forward barge, under the influence of tide and wind, catching on an obstruction, beyond the bulkhead, listing, dumping most of her cargo, and injuring herself.

Appeals from the District Court of the United States for the Southern District of New York.

Two libels in admiralty, tried together, one by the Sutton & Suderley Brick Company, and the other by Jacob Rice, against the steam tug May McGuirl, her engines, etc.; the Shamrock Towing Company, claimant.   From decrees for libelants, claimant appeals.   Affirmed.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for appellant.

Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellee Brick Co.

Macklin, Brown & Purdy, of New York City (William F. Purdy, of New York City, of counsel), for appellee Rice.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge.   The libelants are owners—the Brick Company of the cargo, and Rice of the hull—of the scow Augusta R., which was in charge of the tug May McGuirl, bound for a point on the Gowanus Canal.   After dark of a spring evening, with the wind light from the northeast, the tug arrived as near the scow's destination as she could get that night, and left her tow in what is charged in the pleadings as an unsafe mooring.   The tow consisted, not only of the Augusta R., but of another and somewhat larger brick scow, the Rich.   The two scows had been taken into the canal tandem, with their ends close together; the tug towing on the Augusta R., as hawser boat, by two short hawsers.

There was great congestion in the canal, and at the point where the tug left her tow the scow Keystone was lying, with several other boats, having one end fastened to the bulkhead, and so projecting athwart the canal; her side nearest the approaching tug being clear, and her other side against, and probably fastened to other vessels lying to the same bulkhead.   This bulkhead terminated about 15 feet from the nearer side of the Keystone, and the bottom back of the line of the bulkhead prolonged was not good.

The tow thus about to be left was at least 225 feet long and heavily laden.   The forward end of the Augustus R. was put close to the Key-

stone's side, one line run from her to the Keystone, and the tug went away, leaving 225 feet of brick scows, head on to the Keystone, forming a right angle with her at approximately amidships, and fast to nothing else, with the tide rising, and the wind, though light, tending to swing the tow. That this was a dangerous situation seems very plain; that it was unnecessary is proven by the admission of the McGuirl's master that it was possible to put the boats alongside the Keystone "if you had cared to do it"; and that there was nothing to prevent putting the Augusta R. and Rich alongside each other, instead of tandem—a position which put an enormous leverage on any lines the Augusta R. could get out from her bow or front end to the Keystone.

There was no protest on the part of the two men who made up the crews of the scows at being left in this way. After the tug's departure they attempted, by using their winches, to do what the tug should have done, or furnished the power to do; i. e., get alongside the Keystone and each other. Man power proved insufficient for the work, so they got the side of the Augusta R. against the 15 feet of free bulkhead, made as fast as they could to that mooring, and left the Rich tailing on behind. When the tide fell, the end of the Augusta R. projecting beyond the bulkhead seems to have swung it toward the land, and when the water got low enough caught on some obstruction; the scow listed, dumped most of her cargo, and injured herself. These suits were brought to recover for these damages, which in the opinion of the lower court, and in our opinion, were proximately caused by the failure of the McGuirl to give the scows the best mooring the situation afforded.

The efforts of the boatmen were not successful, but they did the best they could, wherein the case differed from The Britannia, 252 Fed. 583, —— C. C. A. ——. Nor is there any evidence that they might have done anything better, or different, to mend a situation produced by the tug.

We are not unmindful that the master of the Rich is of opinion that the tug could not have done, at the time of her departure, what we find negligence in her not doing. We think, first, that the tug master knew better than the scow captain what was possible; and, second, if he is right, that the tug should not have gone away until safety was assured.

Decrees affirmed, with interest and costs.