## THE MARY ETHEL.*

### DONOVAN v. DIRECTOR GENERAL OF RAILROADS et al. ·

(Circuit Court of Appeals, Second Circuit. November 5, 1923.)

No. 63.

1. **Railroads ⊜—5½, New, vol. 6A Key-No. Series—Director General suable without joining carrier.**

Under Federal Control Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), providing that carriers, while under federal control, shall be subject to liability as before, and General Order No. 50, providing that suits to enforce such liabilities shall be brought against the Director General by name, it is not necessary in such a suit to join as a defendant the company in the operation of whose road the liability arose, and recovery is authorized on proof that it arose in the operation by the Director General of any road or system.

2. **Admiralty ⊜—118—Appeal opens entire case for review.**

On an appeal in admiralty the court may determine the nonliability of one of the respondents, against which decree was entered, though it did not appeal.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Timothy Donovan, owner of deck scow Mary Ethel, against the Director General of Railroads, operating the New

⊜—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari granted 44 Sup. Ct. 331, 68 L. Ed. —.

York, New Haven & Hartford Railroad Company, and Theodore Crane's Sons Company. Decree for libelant against both respondents, and the Director General appeals. Modified and affirmed.

From a final decree of the District Court in favor of libelant against Davis, as Director General of Railroads, primarily, and Theodore A. Crane's Sons Company, secondarily, for $555.27 damages, the appeal was taken.

William L. Barnett, of New York City (Edward R. Brumley, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee Donovan.

Carter & Carter, of New York City (Peter S. Carter, of New York City, of counsel), for other appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The action was to recover for damage to the scow Mary Ethel, owned by libelant, caused by collision on March 28, 1919, at Pier 2, Erie Basin. The facts are very simple, and were rightly decided below. It is unnecessary to recite the details.

For the purpose of this opinion, it is enough to state that the Mary Ethel was moored at Pier 2, Erie Basin. She was damaged by contact with the New York, New Haven & Hartford Railroad Company car float No. 46, which was negligently cast loose by a New York Central tug in removing a New York Central barge or car float to which the No. 46 had been made fast. We think the New York Central Railroad Company tug was sufficiently identified, and in view of the date of the occurrence—i. e., March 28, 1919—we are of opinion that the District Court was justified in finding that the New York Central tug was being operated by the Director General.

[1] 1. The contention of appellant is that:

"Even though it be admitted that the New York Central tug was under the control and operation of the Director General of Railroads operating the New York Central Railroad, the Director General of Railroads operating the New Haven Railroad, being a separate and distinct person, is in no way responsible."

Appellant seeks to avoid the decision of this court in Globe & Rutgers Fire Ins. Co. v. Hines, Agent, 273 Fed. 774, by the effect, as he contends, of Missouri Pacific Railroad Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087. In that case, a statute of Arkansas provided a certain penalty for the nonpayment of the wages of a discharged employee. The opinion dealt with two main questions. In respect of one of these questions, the Supreme Court held, in effect, that Congress had not given its consent that suits of this character be brought against the United States. The other part of the opinion dealt with causes of action which arose prior to government control, and also with those which arose during government control. In our view, the opinion of the Supreme Court fully sustains the Globe & Rutgers Fire Ins. Co. Case, supra. The court said, per Mr. Justice Brandeis:

"If the cause of action arose while the government was operating the system the 'carrier while under federal control' was nevertheless to be liable and suable. This means, as a matter of law, that the government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts. See Gracie v. Palmer, 8 Wheat, 605, 632, 633. The title by which suit should be brought—the person who should be named as defendant—was not designated in the act. In the absence of explicit direction, it was perhaps natural that those wishing to sue the carrier should have named the company as defendant when they sought to hold the government liable. It doubtless seemed, as suggested in McNulta v. Lochridge, 141 U. S. 327, 331, 332, that suit should be brought against the transportation company 'by name "in the hands of," or "in the possession of," a receiver,' or Director General. All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the Director General by name. As the Federal Control Act did not impose any liability upon the companies on any cause of action arising out of the operation of their systems of transportation by the government, the provision in Order No. 50, authorizing the substitution of the Director General as defendant in suits then pending was within his power, the application of the Missouri Pacific Railroad Company that it be dismissed from this action should have been granted, and the judgment against it should therefore be reversed."

We are not here concerned with what question, if any, may arise as between the railroads and the government. The sole point is that the outside litigant, such as this libelant, need look only to the Director General as the party to respond for damage caused by negligence on the part of any of the railroads which he was operating, pursuant to the federal control statutes.

[2] 2. We are unable to see upon what theory Theodore A. Crane's Sons Company was held secondarily liable. Car float No. 46 was in the custody of the Crane concern for repair purposes. There is no evidence which shows that the car float was not properly positioned or made fast or that this respondent, in any manner, was guilty of any negligence. Upon this record, there is no evidence that this respondent had any control whatever over the operation of the New York Central tug.

This respondent did not appeal, but, as this is a new trial, we may, under now thoroughly settled authority, make such disposition as we deem proper whether or not one of the litigants has appealed. The decree must be modified by striking out so much thereof as adjudges Theodore A. Crane's Sons Company secondarily liable.

Decree modified as indicated, with costs in favor of libelant appellee against respondent appellant, and without costs to respondent appellee.