## THE ANNA O'BOYLE.

## THE ST. VINCENT.

## THE ST. LAWRENCE.

## THE CORONE.

### No. 351.

Circuit Court of Appeals, Second Circuit.

July 23, 1941.

Pyne & Lynch, of New York City (Warner Pyne, Anthony V. Lynch, Jr., Dudley C. Smith, and O. Taft Nelson, all of New York City, of counsel), for appellant.

Platow, Lyon & Stebbins, of New York City (Edward F. Platow and Edward A. Baisch, both of New York City, of counsel), for libellant-appellee.

Andrew J. Dritsas, of New York City (Meyer J. Cantor, of Glen Cove, N. Y., of counsel), for Claude T. Stafford, appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

On June 9, 1939, the appellant's tugs St. Vincent and St. Lawrence towed the wooden steamship Corone to public anchorage grounds off Kreisherville, Staten Island, and placed her alongside the libellant's barge Anna O'Boyle. This was a large, ocean-going barge which had been lying in the anchorage for many months and had been purposely sunk to the bottom to preserve her wood, while awaiting reconditioning. At high tide her main deck was awash. Mooring lines were put out from the Corone to the O'Boyle and, after making them fast, the tugs departed. No damage was done to the barge by the initial placing of the steamer alongside but at some unidentified date thereafter the O'Boyle did sustain damage by reason of the strain exerted by the mooring line running to her stern bitt and the riding of the floating steamer against the starboard side of the stationary barge. The district judge was of opinion that the mooring was negligent and that the tugs as well as the steamer must be held responsible because "the tugs supervised the handling of the lines" and the Corone, at the request of her owner, was tied up to the barge "without authority and against the protest of the watchman on board." [30 F.Supp. 209, 211.]

The towage and the mooring were done under the direction of Captain Joseph Carroll, a licensed pilot, who was on the bridge of the Corone during the entire towage. He testified that he gave orders to the tugs and directed what mooring lines should be put out and where they should be placed. He was in the employ of Amboy Towboats, Inc., but he was not a member of the crew of either tug, nor on board either at any time. Despite the testimony of the pilot, the district court not only made the finding already quoted respecting the tug's supervision of the handling of the lines but also stated specifically that the mooring lines "were handled under the direction of the captain of the tug St. Lawrence." The master of this tug was Richard Carroll, a brother of Joseph Carroll, the pilot. Since the pilot's testimony that he gave the orders was undisputed, the appellant contends that the district judge must have confused the identity of the two brothers in making his findings as to who directed the mooring. It then argues, in reliance on The Sarnia, 2 Cir., 261 F. 900, and similar cases, that in rem liability can-

not be imposed on the tugs for errors in a mooring directed by the pilot from the bridge of the Corone. These cases establish the rule expressed in the phrase "The tug could only be held liable in rem for the faults committed by it." The W. L. Steed, 2 Cir., 79 F.2d 2, 5. The typical application of the doctrine involves a situation where, as in The Sarnia, supra, the master of a tug, who leaves his tug to act as pilot of the vessel in tow, is negligent in navigating such vessel, while the tug's navigation is faultless. But personification of the tug as the tort feasor must not be pressed to the point of supposing that in rem liability requires the libellant's damage to result either from physical movement of the libelled vessel or from conduct of her master or crew only when aboard her. Cases relating to faulty mooring demonstrate the contrary. The towing contract creates the duty to bring the tow to her destination and secure her in a seamanlike manner, and for the master's negligent performance of that duty the tug is subject to in rem liability. The May McGuirl, 2 Cir., 256 F. 20; The Mary Ethel, D.C., 290 F. 458, affirmed, 2 Cir., 5 F.2d 1013; O'Boyle v. Cornell Steamboat Co., 2 Cir., 298 F. 95. The doctrine of The Sarnia, supra, does not support the appellant's contention that orders given by the pilot of the Corone to moor to the sunken barge are enough to relieve the masters of the tugs from the duty of seeing to it that the lines were so secured as not to endanger the barge. The record adequately sustains the findings as to their negligence in participating in a mooring which would put an improper strain on the stern bitt and permit the rubbing of the steamer against the side of the barge upon foreseeable changes of tide and weather. In our opinion the tugs were properly held liable in rem, if the negligent mooring caused the damage.

The appellant contends that it did not; that the proximate cause was the negligent failure of those on board the barge or the steamer to take proper precautions when danger of injury became apparent. In the cases cited to support this contention, the original mooring was safe and proper and the damage resulted from intervening negligence by others. Where the original mooring is negligent, the tug does not escape liability but may be held for only half damages if the libellant's barge is also negligent. The Britannia, 2 Cir., 252 F. 583; Fulton Lighterage Co. v. New York &

Cuba Mail S. S. Co., 2 Cir., 83 F.2d 244. In the case at bar intervening negligence was not proved. It is not apparent how paying out the line running to the stern bitt would have released the strain, nor that the line could have been moved to some bitt or cleat better able to withstand the strain. Fault having been established on the part of the tugs, the burden was on the claimant to show contributing fault on the part of the libellant. Royal Mail Steam Packet Co. v. Companhia De N. L. B., D. C., 50 F.2d 207, 212, affirmed 2 Cir., 55 F. 2d 1082, certiorari denied, 287 U.S. 607, 53 S.Ct. 11, 77 L.Ed. 528. On the tugs' appeal the decree must be affirmed.

The owner of the Corone did not appeal nor file assignments of error but is here as an appellee. He asks us to reverse the decree against the Corone. Under Rule 38(3) of this court in effect December 10, 1928, he has no standing to seek relief without filing assignments of error, whatever may be the practice in the absence of such a rule. Cf. The Mary Ethel, 2 Cir., 294 F. 525, 527; The San Rafael, 9 Cir., 141 F. 270, 275. But if he were considered as an appellant he could not prevail. The liability of the Corone is clear; she gave the barge a foul berth and damage resulted. The Pittston, 2 Cir., 279 F. 129. Moreover, the son of the owner was aboard the Corone and participated in the negligent mooring.

Decree affirmed.